UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

ENGRACIA URENA-PEREZ,

                          Plaintiff,              06 Civ. 2589 (JGK)

             - against -                        MEMORANDUM OPINION AND
                                                         ORDER
MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                          Defendant.
_____

JOHN G. KOELTL, District Judge:

     This case concerns limited objections to a Report and

Recommendation by Magistrate Judge Dolinger, familiarity with

which is assumed, recommending that the plaintiff's application

for Disability Insurance Benefits and Supplemental Security

Income under Title II and Title XVI of the Social Security Act

(the "Act"), respectively, be remanded to the Commissioner of

the Social Security Administration (the "Commissioner").[1]

     The plaintiff, Engracia Urena-Perez, filed her Social

Security claims on September 17, 2001, alleging psychological

and physical ailments, including depression and back problems.

A hearing was held on the plaintiff's claims before

_____
[1]    The statutory definitions of disability are identical under both Title
II Disability Insurance and Title XVI Supplemental Security Income Programs.
Compare 42 U.S.C. § 423(d) with 42 U.S.C. § 1382c(a)(3); see also, e.g., Fox
v. Commissioner of Social Security, No. 02 Civ. 1160, 2009 WL 367628, at *7
(N.D.N.Y. Feb. 13, 2009).  Cases under 42 U.S.C. § 423 are cited
interchangeably with cases under 42 U.S.C. § 1382c(a)(3).  See Hankerson v.
Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980); Taveras v. Apfel, No. 97 Civ.
5369, 1998 WL 557587, at *1 n.2 (S.D.N.Y. Sept. 2, 1998); DeJesus v. Chater,
899 F. Supp. 1171, 1173 n.3 (S.D.N.Y. 1995); see also Fox, 2009 WL 367628, at
*7.

Administrative Law Judge Kenneth Levin (the "ALJ") on June 24, 2004.  The ALJ issued a decision on July 13, 2004 denying the plaintiff's application based on a finding that the plaintiff was not disabled (the "ALJ decision").  The plaintiff sought review of the ALJ decision pursuant to Sections 205(g) and 1631(c)(3) of the Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3).  The parties filed cross-motions for judgment on the pleadings and the case was referred to the magistrate judge.  On January 7, 2009, the magistrate judge issued a thorough Report and Recommendation recommending that the plaintiff's motion for a remand be granted and setting forth numerous grounds on which a remand was warranted.

The Commissioner consents to a remand.  The Commissioner only objects to a limited number of the grounds set forth in the Report and Recommendation and seeks clarification that those grounds do not support a remand.  (See Tr. 4 ("[The Court:] Bottom line is, you agree that the case should be remanded to the ALJ, but you think that this Court should note that some of the grounds that the Magistrate Judge set forth for remand were not quite right.  [Defense Counsel:] That's correct.").  Thus the only issue in this case is the correctness of the particular grounds for remand that have been challenged by the Commissioner.  Accordingly, the Court limits its consideration to those grounds.

I

Pursuant to 28 U.S.C. § 636(b)(1)(C), any portion of a magistrate judge's Report and Recommendation to which objection is made is subject to de novo review.  See, e.g., McClain ex rel. McClain v. Halter, No. 99 Civ. 3236, 2001 WL 619177, at *1 (S.D.N.Y. June 5, 2001); DeJesus, 899 F. Supp. at 1174-75.

A Court may set aside a determination by the Commissioner only if it is based upon legal error or is not supported by substantial evidence in the record.  See 42 U.S.C. §§ 405(g) & 1383(c)(3); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); Dousewicz v. Harris, 646 F.2d 771, 773 (2d Cir. 1981). Substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Poupore v. Astrue, 2009 WL 1383274, at *1 (2d Cir. May 21, 2009) (per curiam); Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); Taveras, 1998 WL 557587, at *1; Zwick v. Apfel, No. 97 Civ. 5140, 1998 WL 426800, at *3 (S.D.N.Y. July 27, 1998).

To determine whether a claimant is disabled, the Social Security Administration must undertake a five-step evaluation:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinsky v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)) (internal ellipses omitted); see also 20 C.F.R. §§ 404.1520, 416.920.

II

The Commissioner primarily objects to the magistrate judge's finding that a remand is warranted because the ALJ rejected the key findings of the plaintiff's treating psychiatrist, Dr. Juliana Ekong, and treating psychologist, Dr. Diana Morrobel (collectively the "treating physicians") and relied exclusively on medical expert testimony in their stead.

4

The magistrate judge found that in rejecting the findings of the
treating physicians without explaining the reasons for doing so,
the ALJ flouted the "treating physician rule" of the Social
Security Administration.  (Report and Recommendation ("R.") 75.)
Relatedly, the magistrate judge found that the ALJ should have
developed the administrative record more fully in connection
with the treating physicians' findings as to the plaintiff's
residual functional capacity.[2]  (R. 76.)

 The treating physician rule requires "deference to the
views of the physician who has engaged in the primary treatment
of the claimant" in determining the nature and severity of the
claimant's impairment.  Burgess v. Astrue, 537 F.3d 117, 128 (2d
Cir. 2008) (internal quotation marks omitted).  "According to
this rule, the opinion of a claimant's treating physician as to
the nature and severity of the impairment is given 'controlling
weight' so long as it 'is well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in the case
record.'"  Id. (quoting 20 C.F.R. § 404.1527(d)(2)) (internal
alterations omitted).  "[T]he opinion of the treating physician
is not afforded controlling weight where . . . the treating

---

[2] The term "residual functional capacity" refers to a claimant's capacity
for work, taking into account the claimant's impairments. "Your residual
functional capacity is what you can still do despite your limitations."
Tejada, 167 F.3d at 774 n.3 (quoting 20 C.F.R. § 416.945(a)).

physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

The Commissioner argues that the ALJ did in fact defer to the findings of the treating physicians with respect to the nature and severity of the plaintiff's mental impairment, thus adhering to the treating physician rule. The Court agrees.

The treating physicians each filled out a "functional capacity questionnaire for psychiatric disorders" with respect to the plaintiff (the "questionnaires").[3] The questionnaires were identical. Part B of the questionnaires asked the doctors to specify the degree of limitation that characterized the plaintiff's ability to function in three areas: (1) "Restriction of the activities of daily living," (2) "Difficulties in maintaining social functioning," and (3) "Deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner." (Administrative Record ("AR") 310-311, 367-68.) The treating physicians each specified that the plaintiff had a "mild" limitation in the first area and a "moderate" limitation, indicating a greater level of seriousness, in areas (2) and (3). Part B of the questionnaires

---

[3]     Dr. Ekong signed the first questionnaire and Dr. Ekong and Dr. Morrobel co-signed the second questionnaire.

also asked how often the plaintiff experienced "episodes of
deterioration or decompensation that cause the [plaintiff] to
withdraw from that situation or to experience exacerbation of
signs and symptoms."  The treating physicians each answered that
the plaintiff experienced decompensation "repeatedly."  (AR 311,
368.)

     Part C of the questionnaires directly followed Part B and
instructed the treating physicians: "Based upon your evaluation
of the [plaintiff's] psychiatric status, please indicate the
degree of limitation in the [plaintiff's] ability to do the
following in a work setting on a regular and continual basis."
(AR 313, 370 (emphasis in original).)  The treating physicians
indicated that the plaintiff had a "moderate" limitation in two
areas: (1) "ability to satisfy an employer's normal quality,
production, and attendance standards," and (2) "ability to
perform complex tasks on a sustained basis in a full-time work
setting."  (AR 313, 370.)  The treating physicians also
indicated in Part C that the plaintiff had only a mild
limitation with respect to a range of other work-related tasks.

     The ALJ described the treating physicians' findings as
reflected in the questionnaires as "reasonably similar and
consistent with the other evidence."  (AR 18.)  He distinguished
"the 'B' criteria" on the questionnaires from "the specific

work-related function ratings" on the questionnaires.  (AR 18.)
Although he expressed skepticism regarding the severity of the
plaintiff's mental impairment based on the testimony of a non-
treating mental health expert, Dr. Friedman, and also speculated
that the treating physicians had misunderstood the question in
Part B regarding decompensation, he nonetheless concluded that
the plaintiff's mental impairments were "severe."  (AR 19, 21.)
He then concluded that the plaintiff's mental impairments
limited her to performing jobs that "involve simple and routine
tasks that are low in required stress."  (AR 21; see also AR
20.)  The ALJ used that limitation to limit the jobs that the
plaintiff could perform.

Neither the magistrate judge nor the plaintiff claims that
the ALJ failed to apply the treating physicians' findings in
Part C of the questionnaires to the determination of the
plaintiff's residual functional capacity.  Rather, the
magistrate judge found that the ALJ failed to apply the treating
physicians' findings in Part B of the questionnaires, thereby
implicitly rejecting those findings.[4]  However, the ALJ plainly
deferred to those findings in concluding that the plaintiff's
mental impairments were "severe."  The questions asked in Part B

---

[4]    The magistrate judge did not find, and the plaintiff does not argue,
that the plaintiff suffers from any mental impairment that automatically
constitutes a disability pursuant to 20 C.F.R. §§ 404.1520(a)(4)(iii) or
416.920(a)(4)(iii) because it is listed in 20 C.F.R. Part 404, subpt. P, app.
1.

of the questionnaires reflect the inquiries provided for in the
Social Security regulations for the "assessment of severity."
The regulations provide: "We measure severity according to the
functional limitations imposed by your medically determinable
mental impairment(s).  We assess functional limitations using
the four criteria . . . [a]ctivities of daily living; social
functioning; concentration, persistence, or pace; and episodes
of decompensation."  20 C.F.R. Part 404, subpt. P, app. 1,
listing 12.00(c).  Those are precisely the criteria addressed in
Part B of the questionnaires completed by the treating
physicians.  Therefore, in determining that the plaintiff's
mental impairments were "severe," the ALJ appropriately
accounted for, and deferred to, the treating physicians'
findings.

        The magistrate judge indicated that because the treating
physicians' findings in Part B of the questionnaires could have
an impact on the plaintiff's capacity for full-time work, the
ALJ should have taken those findings into account directly in
determining the plaintiff's residual functional capacity.
However, it was appropriate for the ALJ to take the Part B
findings into account in assessing the severity of the
plaintiff's impairments, which was the purpose of those findings
as set forth in the Social Security regulations, and to

determine the plaintiff's residual functional capacity on the
basis of the treating physicians' Part C findings, which
addressed specific work-related areas of functioning.  Residual
functional capacity is a work-specific inquiry and it was
reasonable for the ALJ to base his determination on the treating
physicians' work-specific findings.  See Woodford v. Apfel, 93
F. Supp. 2d 521, 528 (S.D.N.Y. 2000) ("The Commissioner is
required to consider medical reports with specific findings
about a claimant's work-related abilities when making a residual
functional capacity determination . . . .").  Neither the
magistrate judge nor the plaintiff points to any authority for
the proposition that the Commissioner must re-apply the same
factors used to assess severity to assess residual functional
capacity.  In any event, such double-counting would make no
sense in this case, because Part C of the questionnaires
instructed the treating physicians to answer the specific work-
related questions in that section "based upon your evaluation of
the [plaintiff's] psychiatric status . . . ."  Therefore, the
treating physicians' findings with respect to the plaintiff's
psychiatric status, including the findings reflected in Part B,
were already incorporated into the treating physicians' answers
to Part C.  Put another way, the face of the instructions in
Part C indicates that the treating physicians themselves

10

translated their findings in Part B into the specific work-related findings in Part C.

It should also be noted that both parties agreed at oral argument that nothing prevented the ALJ from deriving from the treating physicians' findings in Part C the conclusion that the plaintiff had the residual functional capacity to perform routine, low-stress work.  Defense counsel assured the Court that no provision in the Social Security regulations set forth any specific required means of translating the findings made by the treating physicians in this case into a determination of residual functional capacity.  (Tr. 13-14.)  Plaintiff's counsel made substantially the same representation.  (Tr. 20 ("There is nothing automatic . . . . [I]t is not like what the child listings used to be years ago . . . .").)

In sum, the ALJ heeded the treating physicians' findings in assessing the severity of the plaintiff's mental impairments, and also heeded the specific work-related findings of the treating physicians in determining the limitations on the plaintiff's residual functional capacity.  The ALJ did not reject the findings of the treating physicians or violate the treating physician rule.  Therefore, although a remand in this case is appropriate on the consent of the parties, that remand is not based on any failure of the ALJ to follow the treating

physician rule with respect to the findings of Dr. Ekong and Dr. Morrobel.

III

The Commissioner's remaining objections to the magistrate judge's Report and Recommendation can be disposed of briefly.

The Commissioner objects to the magistrate judge's finding that the ALJ failed adequately to develop the administrative record.  The ALJ had an affirmative duty to develop the administrative record.  See, e.g., Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).  However, at oral argument the Commissioner made clear that his objection in this respect was limited to the magistrate judge's finding that the ALJ should have re-contacted Dr. Ekong to clarify Dr. Ekong's findings with respect to the frequency of the plaintiff's experience of decompensation.  (Tr. 16. ("[The Court]: Your objection on the failure to develop the record was a limited objection with respect to the failure to re-contact the psychiatrist to deal with the issue of the periods, the episodes of decompensation.  [Defense counsel]: Yes.")  That objection is moot because, as explained above, the inquiry into decompensation relates to the assessment of severity, and the ALJ deferred to the treating physicians and found that the plaintiff's mental impairment was severe.  (Tr. 12 ("[Defense counsel]: [I]t's a little bit moot . . . ."), 16

12

("[Defense counsel]: I am not sure that we covered the portion
of the objections with regard to the need to recontact for
clarification on the rejection of the decompensation.  But maybe
we did because we talked about it, he found it to be severe.
And so it is sort of not relevant.").)  In any event, it will
certainly be appropriate on remand for the ALJ to seek any
further records from the treating physicians in response to the
plaintiff's requests.

To the extent the Commissioner also objected to the finding
by the magistrate judge that the ALJ should have obtained more
medical – as distinguished from mental health – records, any
such objection was withdrawn at oral argument.  (See Tr. 5
("[Defense counsel]: I would disagree that there was a gap in
time with regard to her psychiatric records . . . . [W]ith
regard to her physical records, perhaps that could be true . . .
.").)  In any event, any such objection would be moot because it
will plainly be necessary to update the plaintiff's records on
remand due to the significant amount of time that has elapsed
since the last hearing.

The Commissioner objects to a "sense" that is "woven into"
the magistrate judge's analysis that it was impermissible for
the ALJ to rely on the testimony of a non-examining psychiatrist
in assessing the severity of the plaintiff's mental impairment

or her residual functional capacity. (Tr. 16-17.) Plainly it
is permissible for an ALJ to rely on testimony from a non-
examining physician, but that reliance is subject to the
treating physician rule as described above. See 20 C.F.R. §§
404.1527(f)(2)(iii), 416.927(f)(2)(iii). In any event, this
objection is moot because the ALJ deferred to the findings of
the treating physicians.

In his papers, the Commissioner objected to the magistrate
judge's finding that the ALJ also violated the treating
physician rule with respect to the medical doctors who treated
the plaintiff, as distinguished from the mental health doctors
whose findings have already been discussed. The Commissioner's
objection appeared to be limited to a finding by the magistrate
judge that the ALJ should have "address[ed] explicitly" the
finding by two treating medical physicians that the plaintiff
was "partially" and "totally" disabled, respectively. The
Commissioner is correct that those were legal conclusions for
which the ALJ did not owe deference to the treating medical
physicians under the treating physician rule. See Snell v.
Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

However, to the extent the Commissioner also objected to
the finding by the magistrate judge that the ALJ violated the
treating physician rule by rejecting the findings of the

14

treating medical physicians or at least failing to explain how
his purported acceptance of those findings could be reconciled
with the jobs the ALJ identified as coming within the
plaintiff's residual functional capacity, any such objection was
withdrawn at oral argument.  (See Tr. 7 ("[Defense counsel]: I
believe that the ALJ dealt correctly . . . with the opinions of
the treating psychiatrist and psychologist.  And with regard to
the treating [medical] physicians, it's a little scant.").)
Moreover, such an objection would be without merit because
further explanation from the ALJ is plainly required on this
subject.

                          CONCLUSION

     The Report and Recommendation of the Magistrate Judge is
adopted except as objected to and discussed above.  The decision
by the ALJ is **vacated** and this case is remanded, on the consent
of both parties, to the Commissioner for further proceedings not
inconsistent with this Opinion.  The Clerk is directed to enter
Judgment and to close this case.

**SO ORDERED.**

Dated:    New York, New York
          June 16, 2009

                                    John G. Koeltl
                             United States District Judge

15